**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN-ISIAH:HOLMES JR,<br><br>Plaintiff,<br><br>vs.<br><br>ODRC, MIKE DAVIS (RSA) DEFENDANT #1, *et. al.*,<br><br>Defendants. | : | Case No. 2:24-cv-1426<br><br>Judge James L. Graham<br>Magistrate Judge Kimberly A. Jolson |

**REPORT AND RECOMMENDATION**

The parties' cross-motions for summary judgment are before the Court. (Docs. 24, 25). For the reasons below, the Undersigned **RECOMMENDS** that Plaintiff's Summary Judgment Motion (Doc. 25) be **DENIED** and Defendants' Summary Judgment Motion (Doc. 24) be **GRANTED**.

## I. BACKGROUND

Plaintiff, a prisoner at Chillicothe Correctional Institution ("CCI") proceeding *pro se*, is a religious adherent of the House of Yahweh. (Doc. 9 at 4 (complaint)). One tenant of his religion, says Plaintiff, is that he must eat daily kosher meals. (*Id.* ("Plaintiff follows the orthodox Jewish eat laws . . . and cleanliness laws."); Doc. 25 at 4–5). Plaintiff sues Ohio Department of Rehabilitation and Correction ("ODRC") religious services administrator Mike Davis and CCI's religious services coordinator Alfred Marcus. (*See* Doc. 9 at 2). He alleges they denied him daily kosher meals in violation of his constitutional rights under the First Amendment and his statutory rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). (*Id.* at 4). As relief, Plaintiff seeks an injunction; at least $1,500,000 in damages; and fees. (*Id.* at 13–14; *see also* Doc. 25 at 7 (requesting an order that ODRC "accommodate

plaintiff with daily kosher meals that are deemed kosher and labeled kosher by rabbi priest, that are currently being served to Jewish inmates in ODRC.")).

On July 3, 2023, Plaintiff submitted a request to change his religious affiliation from "Natsarim Sabbatarian" to "the House of Yahweh." (Doc. 25 at 11). That same day, Plaintiff filed a religious accommodation form, requesting kosher meals "so that [he] may properly worship in honor with the prescribed rules of diet for worship." (*Id.* at 19 (cleaned up)). Plaintiff listed several verses of the Torah and represented that he "vowed to keep all these laws." (*Id.* (listing Leviticus chapter 7, verses 19, 23–27; Leviticus chapter 11, verses 8, 10–13; Leviticus chapter 23, verses 29–32; Exodus chapter 22, verse 31; Deuteronomy chapter 14, verses 7–21; and Deuteronomy chapter 16, verse 3; and Numbers chapter 30, verse 2)). Plaintiff further provided the contact information for a House of Yahweh religious overseer, Kohan Ana Yah. (*Id.*).

At some point after his initial request, Plaintiff also submitted a letter, dated October 25, 2023, from Kohan Anayah Hawkins. (Doc. 25 at 22; *see also id.* at 20 (stating Marcus reviewed the letter prior to his recommendation on January 20, 2024)). The record is not clear whether Kohan Ana Yah and Kohan Anayah Hawkins are the same person. (*Compare* Doc. 25 at 19 (providing Kohan Ana Yah's phone number as 325-676-9492) *with* Doc. 25 at 22 (listing Kohan Anayah Hawkins's phone numbers as 325-676-9494 or 325-672-9492)). Regardless, the letter was not originally written for Plaintiff; rather it was addressed to and discussed a different inmate. (Doc. 25 at 22 ("Please provide Chris Williams . . . with a Kosher diet which meets these requirements, including also that he not be served pork.")).

In the letter, Kohan Hawkins provides:

> House of Yahweh members do not consume any food containing pork, shellfish, blood. (Foods that are unclean according to Leviticus Chapter 11 are not to be eaten) . . . It is mandatory that those who adhere to the faith of The House of Yahweh, be provided what is scripturally clean.

(*Id*.). While Plaintiff's request was pending, he could choose between consuming CCI's "main line containing no pork, no shellfish, and no blood and a vegetarian/vegan option." (Doc. 24-2 (declaration of Mike Davis stating CCI was "already permitting" Plaintiff to choose between these meals); Doc. 25 at 3, 20).

In January 2024, Defendant Marcus recommended that Plaintiff's dietary request be denied. (Doc. 25 at 20). Marcus stated that he could not get ahold of Kohan Hawkins despite many attempts. (*Id.*; *see also* Doc. 24 at n.1 (asserting counsel for Defendants attempted to call the number Plaintiff provided for Kohan Hawkins at least eight times but "it has always rung 'user busy'")). Marcus also noted that the meals available to Plaintiff did not violate the principles of the Torah verses he cited in his request or Leviticus 11. (Doc. 25 at 20 ("The meals that are provided by DRC do not violate the principles [Plaintiff] listed in Exodus, Leviticus, Numbers, & Deuteronomy in that they are not served in or with blood, are non pork (swine), are not insect based, or come from any of the winged creatures listed in those passages.")). But because Plaintiff's dietary request was "new," Marcus advised forwarding Plaintiff's request to the religious services administrator, Defendant Davis, for a final decision. (*Id.* (citing prison regulation 72-Reg-02.VI.H)). In February 2024, CCI's warden signed off on the referral. (*Id.*). Then, on March 1, Davis denied Plaintiff's request for a kosher diet. (Doc. 24-1). Mirroring Defendant Marcus's recommendation, Davis explained "DRC currently provides reasonable meal accommodation. Menu items do not include pork, shellfish, or blood." (*Id.*).

This lawsuit followed. Both sides have filed motions for summary judgment. (Docs. 24, 25). Both sides had the opportunity to pursue discovery, and the Court considers the motions simultaneously. The motions are ripe for review. (Docs. 26, 27).

## II. STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Liberty Lobby*, 477 U.S. at 251–52, and *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

## III. DISCUSSION

As a preliminary matter, the Undersigned notes that Plaintiff does not seek monetary damages under RLUIPA. (*See* Doc. 25 at 7 (Plaintiff's statement that '[n]o monetary relief is sought under violations of RLUIPA . . . only injunctive relief[.]"); *see also* Doc. 10 (pending report and recommendation recommending to the extent Plaintiff seeks monetary damages under RLUIPA, that request be dismissed)). Accordingly, the Undersigned considers Plaintiff's prayer for monetary damages only within the context of his individual capacity claims under Section 1983. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be

a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)); *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) ("RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities.").

Additionally, relevant to Plaintiff's requested injunctive relief, Plaintiff's filings suggest he sues Defendants in their individual capacities only. (*See* Doc. 9 at 2 (providing "names and addresses of Defendants in their personal capacities"); Doc. 25 at 1 (stating Defendants were "acting in their individual capacities), 4 (contending the complaint established that Defendants "in their individual capacities . . . have violated [Plaintiff's] civil and RLUIPA rights); Doc. 26 at 3–4 ("Davis and Marcus are sued in their personal (or individual) capacities only.")). Some courts suggest that "RLUIPA does not create a cause of action against an individual in that individual's personal capacity." *Resch v. Rink*, No. 2:21-CV-227, 2022 WL 794849, at *8 (W.D. Mich. Mar. 16, 2022) (citing *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011)); *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity.");*Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities[.]"). Defendants do not raise this in their summary judgment briefing. Ultimately, because the Undersigned recommends granting summary judgment in favor of Defendants on all claims, the Undersigned need not wade into this issue.

**A. Claims Against Defendant Davis**

The Undersigned first considers Plaintiff's claims under RLUIPA and Section 1983 against Defendant Davis before turning to Plaintiff's claims related to the grievance process.

*1. RLUIPA Claim*

RLUIPA prohibits a government from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Under RLUIPA, a "religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

The Sixth Circuit has summarized the burden-shifting framework for a prisoner asserting a RLUIPA claim:

> The prisoner bears the initial burden. She must show (1) her desired religious exercise is motivated by a "sincerely held religious belief" and (2) the government is substantially burdening that religious exercise. *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019). If the prisoner successfully shows the state substantially burdens a sincere religious belief, the burden shifts to the government to justify the burden on the religious adherent under the "daunting compelling interest and least-restrictive-means test," with a slight twist. *Id.* Courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

*Ackerman v. Washington*, 16 F.4th 170, 179–180 (6th Cir. 2021); *see also Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1001 (6th Cir. 2017) (noting the substantial burden inquiry and the question of whether the government's interest is compelling are questions of law). Defendant challenges Plaintiff's initial burden. (Doc. 24 at 6–10).

To begin, while Plaintiff requested kosher meals on his meal accommodation form, at times during this lawsuit, he has alluded to having (and seeking) other dietary accommodations. For example, Plaintiff says that food prepared by inmates "who are unclean" or who are in an "unclean

environment" is not sufficient. (Doc. 9 at 11; Doc. 25 at 3, 4; Doc. 26 at 9). But notably, in his accommodation request, Plaintiff does not define what "unclean" means in either context. At the end of the day, these beliefs were not stated or explained in the request that Davis reviewed. Consequently, the Undersigned considers only the dietary requirements laid out in Plaintiff's request that Davis had the opportunity to consider.

As stated, Plaintiff must first demonstrate his meal accommodation request stems from a sincerely held religious belief. *Cutter*, 544 U.S. at 725 n.13 ("Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion . . . the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity."). This showing is not difficult for prisoners to make. *Ackerman*, 16 F.4th at 180. Rather, "[t]he sincerity prong just requires courts 'to determine whether the line drawn by the plaintiff between conduct consistent and inconsistent with her or his religious beliefs reflects an honest conviction.'" *Id.* (quoting *New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 586 (6th Cir. 2018) (internal quotation marks and citation omitted)). *Ackerman*, 16 F.4th at 181.

Plaintiff's request says he "belong[s] to The House of Yahweh," and his desire to receive kosher meals is "so that [he] may properly worship in honor with the prescribed rules of diet for worship." (Doc. 25 at 19 (cleaned up); *see also* Doc. 25 at 7 (asserting that he needs food "deemed kosher and labeled kosher by a rabbi priest" and that eating "scripturally and ritually clean meals is part of 'worship[ing] [his] Father"); Doc. 26 at 6 (same)). Defendants challenge Plaintiff's beliefs. (Doc. 24 at 7). They suggest that because the accommodation request was scant, because Plaintiff did not say a kosher diet was required by his beliefs, and because Plaintiff recently changed his religion, his request was insincere. (*Id.*; Doc. 27 at 5–7). Though courts may consider "factors like length of adherence, knowledge about the belief system, and the existence of religious

literature and teachings supporting the belief" in assessing a plaintiff's sincerity, "[i]n the end, the sincerity requirement is just a 'credibility assessment' that asks if a prisoner's religious belief is honest." *Ackerman*, 16 F.4th at 181 (citations omitted).

Because the sincerity prong is a low threshold, the Undersigned concludes that Plaintiff has at least raised an issue of material fact as to whether his desire to eat a particular religious diet is motivated by a sincerely held religious belief. Ultimately, though, whether Plaintiff's belief is sincere is immaterial to the outcome of this claim because sincerity is just the first step.

At the second step, Plaintiff must show that Defendant Davis's denial of his accommodation request substantially burdens his religious exercise. At base, the "substantial burden" showing is a "difficult threshold to cross." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 736 (6th Cir. 2007). "'[T]he Government substantially burdens an exercise of religion' under RLUIPA 'when it places substantial pressure on an adherent to modify his behavior and to violate his beliefs or effectively bars his sincere faith-based conduct.'" *Ackerman*, 16 F.4th at 184 (quoting *Fox v. Washington*, 949 F.3d 270, 278 (6th Cir. 2020)) (internal quotation marks omitted). A prison substantially burdens a religious exercise when it "prevents participation in sincerely motivated conduct." *Id.* (citation omitted). A burden is less than substantial when it "does not 'pressure the individual to violate his or her religious beliefs.'" *Young v. McKee*, No. 2:17-CV-23, 2019 WL 5273963, at *4 (W.D. Mich. July 16, 2019) (citation omitted), *report and recommendation adopted*, No. 2:17-CV-23, 2019 WL 3561840 (W.D. Mich. Aug. 6, 2019); *see also Mubashshir v. Moore*, No. 3:10 CV 2501, 2011 WL 251114, at *2 (N.D. Ohio Jan. 25, 2011) ("The term 'substantial burden' as used in RLUIPA should be given the same interpretation as the concept of substantial burden on religious exercise in a First Amendment inquiry." (citation omitted)). Because RLUIPA dictates "that the substantial-burden inquiry is

practice specific[,]" the Court must "first identify the 'religious exercise' at issue." *Ackerman*, 16 F.4th at 184–85 (citing 42 U.S.C. § 2000cc-1; 42 U.S.C. § 2000cc-5; and *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015)).

Plaintiff's request for a religious meal accommodation was brief. He requested kosher meals "so that [he] may properly worship in honor with the prescribed rules of diet for worship." (Doc. 25 at 20 (cleaned up)). He elaborated only by citing Torah verses and stating, "I vowed to keep all these laws." (*Id.*). For its part, Kohan Hawkins's letter does request that CCI provide someone with a kosher diet (that also does not include pork). (Doc. 25 at 22). But that person is not Plaintiff. (*Id.* (letter addressed to and referencing inmate Chris Williams)). And even assuming the letter applies to Plaintiff, nowhere does Kohan Hawkins state that kosher meals are required for House of Yahweh members. (*Id.*). The only stated requirement for meals is that House of Yahweh members "do not consume any food containing pork, shellfish, or blood." (*Id.* (also noting that it is "mandatory that those who adhere to the faith of The House of Yahweh, be provided what is scripturally clean" but not defining what "scripturally clean" means beyond stating "foods that are unclean according to Leviticus Chapter 11 are not to be eaten")).

The record shows that Plaintiff has meal options available to him that meet all these requirements. (Doc. 24-2 (declaration of Mike Davis stating that CCI "was already permitting [Plaintiff] to choose between eating from its main line containing no pork, no shellfish, and no blood, and a vegetarian/vegan option); Doc. 25 at 3, 20). His options account for the beliefs outlined in Kohan Hawkins's letter that House of Yahweh members do not consume pork, shellfish, or blood, and the vegetarian/vegan options in particular do not contain meat at all. (*See* Doc. 24-2 at ¶ 6 (Defendant Davis's declaration that CCI's main line meal menu and the vegetarian and vegan options do not contain pork, shellfish or blood.)).

In his briefing, Plaintiff generally argues that by offering him only vegan or vegetarian meals, Defendants are enforcing "what they believe Father Yahweh meant" rather than what Plaintiff believes. (Doc. 25 at 4). But notably, in his accommodation request, Plaintiff did not explain, describe, or clarify the "laws" he listed or how they relate to his beliefs about food. (*Id.* at 20). In other words, Plaintiff provided Defendant Davis almost no guidance for what his beliefs or dietary restrictions actually are. *Cf. McAtee v. Ewing*, No. 18-CV-858-WMC, 2021 WL 3856742, at *9 (W.D. Wis. Aug. 30, 2021) ("While plaintiff asserts that no further detail was necessary [as to his request for a kosher diet] because WSPF served only one kind of kosher meal, a kosher diet is not, as plaintiff puts it, 'self-explanatory.' . . . Indeed, Jewish inmates do not all strictly follow all dietary laws[.]"). At base, Plaintiff receives meals that accommodate the beliefs stated in his accommodation request and in Kohan Hawkins's letter.

Consequently, the Undersigned concludes Plaintiff has failed to demonstrate Defendant Davis's denial of his kosher meal request substantially burdened his religious exercise. *See Spearman v. Michigan*, No. 20-1476, 2020 U.S. App. LEXIS 40577, at *11–12 (6th Cir. 2020) (dismissing an RLUIPA claim because a plaintiff's testimony did not establish that a vegan diet was a tenant of his religion, therefore the denial of his request to receive vegan meals did not substantially burden the practice of his religion); *Robinson v. Jackson*, 615 F. App'x 310, 313 (6th Cir. 2015) (affirming dismissal of a Muslim prisoner's RLUIPA claim based on the denial of halal meals because, by the plaintiff's "own definition," a vegetarian meal that contained no meat or alcohol was halal.); *cf. Ruiz v. Adamson*, No. 10 C 1632, 2012 WL 832986, at *7 (N.D. Ill. Mar. 8, 2012) (concluding a prisoner met the substantial burden showing when the prison official seemingly based his understanding of House of Yahweh dietary requirements solely on a letter sent to a different chaplain at a different prison years earlier). And because Plaintiff has not carried

his burden of demonstrating that Defendant Davis substantially burdened his religious exercise, the Undersigned need not delve into the third step of the RLUIPA analysis. *See, e.g.*, *Thomas v. Little*, No. 07-1117-BRE/EGB, 2009 WL 1938973, at *5 (W.D. Tenn. July 6, 2009) (citing *Living Water Church of God*, 258 Fed. App'x at 742). Accordingly, the Undersigned **RECOMMENDS** that Defendant Davis be **GRANTED** summary judgment on this claim.

*2. First Amendment Free Exercise Claim*

Plaintiff's Section 1983 claim, based on the same conduct at issue in his RLUIPA claim, is rooted in the First Amendment's free exercise clause. Like a claim under RLUIPA, a prisoner bringing a claim that prison officials violated his right to exercise his religion must first establish that "the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (citation omitted)). Then, the plaintiff must establish that the defendant's behavior "infringes upon this practice or belief." *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 460–61 (6th Cir. 2019). In other words, "the prisoner must also show that the prison's action substantially burdens his sincerely held religious beliefs." *Turner v. Ohio Dep't of Rehab. & Correction*, No. 2:19-CV-02376, 2021 WL 2158179, at *4 (S.D. Ohio May 27, 2021), *report and recommendation adopted*, No. 2:19-CV-2376, 2021 WL 3486328 (S.D. Ohio Aug. 9, 2021). If the inmate can make that showing, the court then applies the balancing test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), to determine whether the defendant's conduct was reasonable. *Turner*, 2021 WL 2158179, at *4; *see also Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010) ("The constitutional protection afforded under § 1983 is less strong [than that under RLUIPA.]").

Because the Undersigned has concluded that Plaintiff failed to show Defendant Davis's denial of his kosher meal accommodation request substantially burdened Plaintiff's religious exercise, it is unnecessary to proceed with the *Turner* test. *See, e.g.*, *Annabel v. Campbell*, No. CV 20-11114, 2023 WL 9111615, at *5 (E.D. Mich. Sept. 26, 2023) ("Because summary judgment should be granted on his RLUIPA claims, it follows that summary judgment should be also granted for Defendants on Annabel's First Amendment Free Exercise claims, as '[c]ourts have recognized that, in the prison context, RLUIPA provides greater protections than the First Amendment.'" (citations omitted)), *report and recommendation adopted in part*, No. 20-11114, 2024 WL 915542 (E.D. Mich. Mar. 4, 2024); *Stovall v. Prisk*, No. 2:22-CV-146, 2022 WL 4376599, at *4 (W.D. Mich. Sept. 22, 2022) (citation omitted) ("The Sixth Circuit has relied upon [RLUIPA's] legislative history to conclude that ["substantial burden"] has the same meaning under RLUIPA as provided by the Supreme Court in its decisions regarding First Amendment free exercise claims."). *See also Al-Shimary v. Dirschell*, No. 2:21-cv-12269, 2023 WL 5385414, at *2 (E.D. Mich. Aug. 22, 2023) (citing *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)) ("No constitutional right is violated when a prisoner's diet is sufficient to sustain him or her in good health and without violating his or her religious dietary restrictions."). The Undersigned **RECOMMENDS** that Defendant Davis be **GRANTED** summary judgment on this claim as well.

*3. Grievance Claims*

Tangentially, Plaintiff contends that Defendant Davis "refused to resolve" his accommodation request in violation of his rights. (Doc. 25 at 5–6 (arguing this conduct violated his First Amendment free exercise rights)). Plaintiff's arguments seem to be about the length of time it took for him to receive a final decision. (*See* Docs. 25, 26; *compare* Doc. 25 at 19 (Plaintiff's meal accommodation request dated July 3, 2023) *with id.* at 20 (Marcus's

recommendation dated January 20, 2024) *and id.* at 16 (Davis's decision dated March 1, 2024)). Parts of the record suggest that, at first, Plaintiff's accommodation request did not appear in CCI's online database after it was submitted, contributing to a delay. (*See* Doc. 9-12 at 3). But Plaintiff does not provide much more clarity on this claim other than to say Davis "should have known the laws governing his position, and the accountability that comes with intentional violations of [rights] . . . ." (Doc. 25 at 6–7).

Plaintiff cites no caselaw to support that these alleged failures represent a constitutional violation. *See Christian Separatist Church Soc'y of Ohio v. Mohr*, No. 2:15-CV-2757, 2017 WL 9532003, at *3 (S.D. Ohio Jan. 30, 2017) (quoting *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)) ("[T]here is no inherent constitutional right to an effective grievance procedure."), *report and recommendation adopted*, No. 2:15-CV-2757, 2017 WL 1030458 (S.D. Ohio Mar. 17, 2017); *Robison v. Coey*, No. 2:15-CV-944, 2015 WL 5437175, at *10 (S.D. Ohio Sept. 14, 2015) (citing *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007)) ("An alleged failure to comply with an administrative rule or policy does not rise to the level of a constitutional violation."). And, at base, the record shows that Plaintiff was able to choose a meal option that complied with the requirements outlined in his accommodation request. (Doc. 24-2). So, any delay did not harm him.

Accordingly, the Undersigned **RECOMMENDS** that Defendant Davis be **GRANTED** summary judgment on this claim.

### B. Claims Against Defendant Marcus

Like his claims against Defendant Davis, Plaintiff contends that Defendant Marcus violated his rights under the First Amendment and RLUIPA when he did not provide him with kosher meals. (Doc. 25 at 7). But these claims must fail because Plaintiff has not established Marcus's

personal involvement in the ultimate denial of his meal accommodation request. When bringing a Section 1983 or RLUIPA claim, a plaintiff must establish that each defendant was "personally involved in the activities which form the basis of the alleged unconstitutional behavior." *Long v. Sloan*, No. 1:18-cv-1364, 2019 WL 4396079, at *7 (N.D. Ohio May 23, 2019); *Greenberg v. Hill*, 2:07-cv-1076, 2009 WL 890521, at *5–6 (S.D. Ohio Mar. 31, 2009) (applying the personal involvement requirement to RLUIPA).

The record unambiguously shows Marcus merely recommended that the request be denied and referred the matter to Defendant Davis for a final decision. (Doc. 25 at 20; *see also id.* at 16 (Davis's decision)). What's more, nothing in the record points to Marcus having ultimate authority. *Prim v. Jackson*, No. 2:14-CV-1219, 2015 WL 1198054, at *5 (S.D. Ohio Mar. 16, 2015) (dismissing a Section 1983 claim against a defendant who advised denying a kosher meal request but who was not the ultimate decisionmaker's supervisor), *report and recommendation adopted*, No. 2:14-CV-1219, 2015 WL 2084706 (S.D. Ohio May 4, 2015). While Marcus recommended the request be denied, the final decision fell to Davis. *See Williams v. Warden, Chillicothe Corr. Inst.*, No. 2:23-CV-1042, 2024 WL 406446 (S.D. Ohio Feb. 2, 2024) (dismissing Defendant Marcus for the same reason in an essentially identical situation), *report and recommendation adopted*, No. 2:23-CV-1042, 2024 WL 1045165 (S.D. Ohio Mar. 11, 2024). In other words, Marcus did not have the requisite personal involvement in the denial as to allow RLUIPA or Section 1983 liability to extend to him.

And to the extent Plaintiff claims that Defendant Marcus violated his rights by interfering with or failing to properly file or investigate Plaintiff's accommodation request, (Doc. 25 at 5–6), his arguments fail for the same reasons stated above.

Consequently, the Undersigned **RECOMMENDS** that Defendant Marcus be **GRANTED** summary judgment on all claims.

## IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Plaintiff's Summary Judgment Motion (Doc. 25) be **DENIED** and Defendants' Summary Judgment Motion (Doc. 24) be **GRANTED**.

Date: February 26, 2025

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

## Procedure on Objections

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).